TIMOTHY COURCHAINE
United States Attorney
District of Arizona
ARON KETCHEL
Assistant U.S. Attorney
Arizona State Bar No. 038421
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: aron.ketchel@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>vs.<br><br>Robert Swagger,<br><br>  Defendant. | No. CR-23-01292-PHX-SMB<br><br>**GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT ROBERT SWAGGER** |

Plaintiff United States of America, by and through its counsel or record, the United States Attorney for the District of Arizona, and Assistant United States Attorney Aron Ketchel, hereby files its sentencing position with respect to defendant Robert Swagger ("defendant").

Defendant awaits sentencing after pleading guilty to Count 1 of the indictment charging wire fraud, in violation of 18 U.S.C. § 1343. The government concurs with both the total offense level and criminal history calculated in the Presentence Investigation Report ("PSR"). The United States further concurs with the Probation Office's recommendation of 10 months' imprisonment followed by 3 years of supervised release; and restitution to three victims in the amount of $202,000. The government does not seek a fine payment in an effort to promote a more expeditious payment of restitution to the individual victims.

The above recommended sentence and terms fairly balances the serious nature of defendant's offense, the need for strong specific deterrence, defendant's personal characteristic, and the public policy concerns listed in § 3553(a).

## I. RESPONSE TO THE PSR

### A. Offense Level

The government concurs with the PSR's calculation of defendant's offense level. The base level for defendant's offense is 7 pursuant to U.S.S.G. § 2B1.1 and a ten-level enhancement is applied because the loss is between $150,000 and $250,000. (PSR ¶¶ 25-26.) Defendant is entitled to a three-level departure based upon his acceptance of responsibility. (*Id.* ¶¶ 31-32.) Defendant also should receive a two-level departure because he is a zero-point offender. (*Id* ¶ 33.) Defendant's total offense level is therefore 12. (*Id.* ¶ 34.)

### B. Criminal History Category

The government concurs that defendant is in Criminal History Category I with no criminal history points. (PSR ¶¶ 37-38.) A total offense level of 12, with a Criminal History Category of I, results in a Guidelines range of 10-16 months.

## II. A 10 MONTH SENTENCE IS REASONABLE AND APPROPRIATE UNDER THE 3553(A) FACTORS

### A. Nature and Circumstances of the Offenses, § 3553(a)(1)

Defendant devised and executed a straight-forward but particularly deceptive fraud scheme in which he exploited three individuals who trusted defendant, in part, based upon their mutual participation in the same professional networking group. (PSR ¶¶ 18-19.) Defendant promised each of the victims that he was investing their $50,000 or $100,000 in Pure Flix – a legitimate film production company headquartered in Scottsdale. (*Id.* ¶¶ 11, 12, 14.) Defendant, however, did not appear to make any effort to invest the victim's money and instead used the money for personal expenses. (*Id.* ¶ 10.)

Defendant knew either prior to or shortly after collecting money from the victims in the summer of 2019 that he would not be investing their money in Pure Flix. Rather than

inform the victims that he could not invest their money and return the funds to them, defendant lied to each of the victims by telling the victims that the funds *had* been invested in Pure Flix and the investments were performing well. (*Id*. ¶¶ 11, 12, 14.) Even as the victims became increasingly suspicious and pressed defendant for answers about their investments, defendant continued to string the victims along for years with more lies, including blaming Pure Flix, and offering to "roll" the victims' investments into new investment options. (*Id*.) Once it became clear to the victims that defendant never invested their money, the victims all demanded their money back and defendant promised to repay them. (*Id*. ¶ 11.)

Defendant never repaid the victims, despite knowing that he had defrauded them of $202,000 nearly six years ago.

**B.     History and Characteristics of Defendant, § 3553(a)(1)**

The PSR indicates that defendant had a stable upbringing and maintains a close relationship with his parents. (PSR ¶ 43.) Defendant is well-educated, having received a Master of Education degree. (*Id*. ¶ 55.) Defendant does not report having any substance abuse issues. (*Id.* ¶¶ 52-53.) Defendant reportedly was diagnosed with a mental health disorder as a child (*id*. ¶ 43), but that condition has not inhibited defendant from securing professional positions, participating in high-powered professional organizations, or successfully convincing sophisticated investors to invest large sums of money. These are positive factors but also indicate defendant fully understood the degree of deception he employed against the victims.

Defendant appears to have struggled with finances for over a decade and has difficulty taking accountability for his actions. After breaching a promise to pay over $215,000 to a former employer in or around 2009, defendant asserted he should not have to repay the debt because the company defamed him in regulatory filings. (*Id*. ¶ 63.) The company, however, prevailed before an arbitration panel in 2011, which ordered defendant to pay not only damages, but attorney's fees and costs as well. (*Id*. ¶¶ 63, 70.) Four years later, defendant was ordered in a separate civil judgment to pay over $539,000 to a bank.

(*Id*. ¶ 67.) Defendant and his wife currently own two luxury vehicles despite owing over $50,000 in back taxes and having other significant liabilities. (*Id*. ¶ 71.)

Defendant's background, spending patterns, and circumstances surrounding the fraud suggest that defendant raised the funds from victims simply to fund his comfortable lifestyle with the hope that he could convince the victims that their funds were simply lost through a risky investment. Defendant's prominence, leadership, and pre-existing means should be considered as an aggravating factor rather than a mitigating factor for sentencing purposes.

### C. Need for Deterrence and to Promote Respect for the Law, § 3553(a)(2)

The need for both general and specific deterrence supports the government's recommended sentence. With respect to general deterrence, defendant is a prominent businessman in the local community. His conviction and sentence will serve an important message to the business community to not exploit their professional relationships to steal money.

The need for specific deterrence is also strong in this matter. Defendant has engaged in a pattern of failing to take full responsibility for his actions and continuing to try to place blame on others. Defendant has known for nearly six years that he owes the victims $202,000 but has taken no steps to repay that debt, and continues to live a financially unsustainable lifestyle that suggests defendant could look for other, illicit ways to pay off his significant liabilities.

### D. Policy Statements and Need to Avoid Unwarranted Sentencing Disparities, § 3553(a)(6)

The government asserts that an 10-month sentence avoids unwarranted sentencing disparities with other defendants in similar circumstances. The government considered the various aggravating and mitigating factors in this case in arriving at this recommendation.

## III. RESTITUTION AND FINE

The government requests that the Court order defendant to pay restitution to the three victims as described in the PSR. (PSR ¶ 82.) The government agrees with the

Probation Office that defendant's financial reporting is suspicious and defendant may have an ability to pay a fine. (*Id.* ¶ 71.) Nevertheless, in light of defendant's significant liabilities and the large restitutions amounts owed to individual victims, the government does not seek an order that defendant pay a fine.

## V.     CONCLUSION

For the foregoing reasons, the government believes that the sentence recommended by the government is sufficient, but not greater than necessary, to punish defendant and his crime, promote respect for the law, deter defendant and others from committing similar crimes in the future, and avoid unwarranted sentencing disparities. *See generally* 18 U.S.C. § 3553(a).

The government therefore recommends that the Court sentence defendant to 10 months' imprisonment followed by three years of supervised release, restitution in the amount of $202,000 due to the three victims, and a mandatory special assessment of $100.

Respectfully submitted this 17th day of April, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

  *s/Aron Ketchel*
ARON KETCHEL
KEVIN M. RAPP
Assistant U.S. Attorneys

### CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrants: Alan Baskin and Christopher Lonn.

  *s/ Aron Ketchel*
U.S. Attorney's Office